JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KARLE ECK

**DEFENDANTS**

WALMART INC.; WAL-MART ASSOCIATES, INC.

**(b)** County of Residence of First Listed Plaintiff  LANCASTER
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  LANCASTER
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rahul Munshi, Esq., Console Mattiacci Law, 1525 Locust Street, 9th Fl., Philadelphia, PA 19102
215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq.; 29 U.S.C. §2601, et seq.; 43 P.S. §951, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against based on sex and pregnancy in violation of state and federal law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  05/26/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Elizabethtown, PA 17022 _____

Address of Defendant: _____ 2034 Lincoln Highway East, Lancaster, PA 17602 _____

Place of Accident, Incident or Transaction: _____ Lancaster, PA 17602 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/26/2023 _____ _Attorney-at-Law / Pro Se Plaintiff_ _____ 307548 _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Rahul Munshi _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: 05/26/2023 _____ _Attorney-at-Law / Pro Se Plaintiff_ _____ 307548 _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Karle Eck | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Walmart, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
 and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
 exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
 commonly referred to as complex and that need special or intense management by
 the court. (See reverse side of this form for a detailed explanation of special
 management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 05/26/2023 | Rahul Munshi | Karle Eck, Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-689-4365 | munshi@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KARLE ECK,
Elizabethtown, PA 17022

       *Plaintiff,*

  v.

WALMART INC.
2034 Lincoln Highway East
Lancaster, PA 17602

and

WAL-MART ASSOCIATES, INC.,
702 S.W. 8th Street
Bentonville, AR 72716

       *Defendants.*

CIVIL ACTION NO.:


JURY TRIAL DEMANDED

<u>**COMPLAINT**</u>

**I. INTRODUCTION**

Plaintiff, Karle Eck ("Plaintiff") was a longtime and dedicated employee of Walmart Inc. and Wal-Mart Associates, Inc. (collectively, "Walmart" or "Defendants"). During the first nine (9) years of her employment at Walmart, Plaintiff received overwhelmingly positive performance feedback and multiple promotions. Then, when she informed her manager of her pregnancy and intention to take FMLA maternity leave, everything changed. For the first time in her career, she received a negative annual performance review. When she returned from her maternity leave, Plaintiff had a target on her back. During the months that followed her return from FMLA maternity leave, Defendants issued Plaintiff a series of Disciplinary Actions which criticized her performance, in large part, for issues that were out of her control and were the result of Defendants permitting her store to fall into a state of disarray while she was out on maternity leave. Defendants

1

then used those same Disciplinary Actions to justify her termination. Defendants notified Plaintiff

of her termination shortly after Plaintiff complained that they were discriminating against her.

Plaintiff now brings claims against the Defendants pursuant to Title VII of the Civil Rights

Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Family Medical Leave Act,

29 U.S.C. §2601, *et seq*. ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43

P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory

damages, punitive damages, liquidated damages, attorneys' fees and costs, and all other relief this

Court deems appropriate.

## II.    PARTIES

1.    Plaintiff, Karle Eck, is an individual and citizen of the Commonwealth of

Pennsylvania. She resides in Elizabethtown, Pennsylvania.

2.    Plaintiff is female.

3.    Defendant Walmart Inc. is organized under the laws of the State of Delaware and

maintains a principal place of business at 2034 Lincoln Highway East, Lancaster, PA 17602.

4.    Defendant Walmart Inc. is engaged in an industry affecting interstate commerce

and regularly does business in the Commonwealth of Pennsylvania.

5.    Defendant Wal-Mart Associates Inc. is organized under the laws of the State of

Delaware and maintains a principal place of business at 702 S.W. 8th Street, Bentonville, AR

72716.

6.    Defendant Wal-Mart Associates Inc. is a wholly owned subsidiary of Defendant

Walmart Inc.

7.    The operations of Defendants are substantively consolidated.

8.    At all times material hereto, have acted as a single employer, joint employers, and/or alter egos.

9.    Defendants are engaged in an industry affecting interstate commerce and regularly conduct business in the Commonwealth of Pennsylvania.

10.    At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

11.    At all times material hereto, Defendants employed more than fifty (50) employees.

12.    At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

13.    At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes that form the basis of this matter.

## III.    JURISDICTION AND VENUE

14.    The causes of action which form the basis of this matter arise under Title VII, the FMLA, and the PHRA.

15.    The District Court has jurisdiction over Count I (Title VII) and Count II (FMLA) pursuant to 28 U.S.C. §1331.

16.    The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

17.    Venue is proper in this District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f).

18.    On or about September 2, 2021, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation

3

alleged herein. Plaintiff's PHRC Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

19.    On or about March 1, 2023, the EEOC issued the Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

20.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.    **FACTUAL ALLEGATIONS**

21.    Plaintiff was hired by Defendants on or about September 18, 2010 as an Associate.

22.    Throughout her tenure, Plaintiff was a strong performer and received numerous promotions in recognition of same.

23.    In or around September 2017 and amid her strong performance, Plaintiff was promoted to the rank of Store Manager at Defendants' Lancaster, Pennsylvania retail location.

24.    In or around September 2017, contemporaneous with her promotion to Store Manager, Plaintiff began reporting to Randall Mummert ("Mummert") (male), Market Manager. Mummert, in turn, reported to Ann-Louise Almeida ("Almeida") (female), Regional Manager.

25.    In or around February 2018, Mummert rated Plaintiff as a "Solid Performer" on her annual performance review.

26.    In or around February 2019, Mummert rated Plaintiff as a "Solid Performer" on her annual performance review.

27.    On or about December 10, 2019, during a meeting with Mummert, Plaintiff informed Defendants that she was pregnant with her first child.

28.    In or around January 2020, during a meeting with Mummert, Plaintiff informed Defendants that her due date was August 13, 2020, and that she planned to take a maternity leave following the birth of her child.

29.    On or about February 28, 2020 – roughly two (2) months after informing Defendants of her pregnancy and one (1) month after informing Defendants of her intention to take an FMLA-qualifying maternity leave – Mummert rated Plaintiff as "Improvement Needed" on her annual performance review.

30.    Plaintiff had been rated by Defendants as a "Solid Performer" or higher on every annual performance review she received prior.

31.    Plaintiff's performance did not warrant an "Improvement Needed" rating.

32.    Defendants issued Plaintiff an unwarranted "Improvement Needed" rating because of her pregnancy and because she invoked her right to job-protected leave under the FMLA.

33.    On August 7, 2020, Plaintiff commenced her FMLA maternity leave.

34.    While out on FMLA maternity leave, Plaintiff was contacted by Mummert, Kayla Royce ("Royce") (female), Market Coordinator, and other employees of Defendants with work-related questions and for assistance resolving issues related to Defendants' Lancaster store.

35.    While Plaintiff was out on FMLA maternity leave, Defendants transferred two (2) of Plaintiff's direct reports to another store and did not replace them at the Lancaster store. Additionally, several of Plaintiff's direct reports were separated from the company and similarly not replaced.

5

36.    While Plaintiff was out on FMLA maternity leave, Defendants allowed the Lancaster store to fall into a state of disarray.

37.    On December 7, 2020, Plaintiff returned from her FMLA maternity leave.

38.    After returning to work from FMLA maternity leave, Plaintiff was treated differently and worse than employees who had not recently been pregnant or taken FMLA leave. Examples of same include, without limitation:

    a.    Mummert became visibly agitated when Plaintiff reminded him that she would be utilizing one (1) week of her earned paid time off ("PTO") to care for her child during a week when her child's daycare was closed in January 2021.

    b.    Plaintiff was reprimanded by Defendants for having freight on the backroom floor despite Mummert instructing Plaintiff to have employees place freight on the backroom floor. Store Managers who were not recently pregnant and who had not recently taken an FMLA maternity leave were not reprimanded for having freight on the backroom floor.

    c.    Defendants denied Plaintiff's requests for additional support at her store while similar requests from Store Managers who were not recently pregnant and/or had not recently taken FMLA maternity leave were granted.

    d.    Defendants blamed Plaintiff for issues at the Lancaster store which were out of her control and/or had arisen – and Defendants had failed to address – while she was out on FMLA maternity leave.

39.    On March 19, 2021, during a phone call with Royce and other Store Managers, Plaintiff asked why Defendants were transferring employees from Plaintiff's store to assist in other stores while simultaneously denying Plaintiff's requests for additional support in her store.

40.    On March 25, 2021, during a meeting with Mummert and Deb Peasley ("Peasley"), Digital Marketing Coach, Plaintiff was placed on a First Disciplinary Action.

41.    The stated reason for Plaintiff's First Disciplinary Action was job performance/productivity.

42.    Specifically, Plaintiff's First Disciplinary Action falsely stated that Plaintiff was combative with employees.

43.    Plaintiff understood the allegation of combativeness to be in reference to her question to Royce during the March 19, 2021, call regarding the transfer of employees despite understaffing in the Lancaster store.

44.    Plaintiff's performance did not warrant a Disciplinary Action.

45.    Defendants placed Plaintiff on a First Disciplinary Action because of her pregnancy and/or because she had recently taken FMLA maternity leave.

46.    On May 13, 2021, during a meeting with Mummert and Jessica Santiago ("Santiago"), Market Human Resources Manager, Plaintiff was placed on a Second Disciplinary Action.

47.    The stated reason for Plaintiff's Second Disciplinary Action was job performance/productivity.

48.    Specifically, Plaintiff's Second Disciplinary Action blamed Plaintiff for store employees calling out of work, falsely attributing same to Plaintiff's leadership.

49.    To Plaintiff's knowledge, no other Store Manager who was not recently pregnant and/or had not recently returned from FMLA leave was issued a Disciplinary Action for store employees calling out of work.

50.    Plaintiff's performance did not warrant a Disciplinary Action.

51.     Defendants placed Plaintiff on a Second Disciplinary Action because of her pregnancy and/or because she had recently taken FMLA maternity leave.

52.     On June 1, 2021, amid her doctor's advice and as a result of the stress and anxiety caused by Defendants' discriminatory and retaliatory treatment of her, Plaintiff commenced a medical leave of absence.

53.     Plaintiff returned from her medical leave of absence on June 19, 2021.

54.     On July 24, 2021, during a meeting with Mummert and Santiago, Plaintiff was placed on a Third Disciplinary Action.

55.     The stated reason for Plaintiff's Third Disciplinary Action was job performance/productivity.

56.     Plaintiff's performance did not warrant a Disciplinary Action.

57.     Defendants placed Plaintiff on a Third Disciplinary Action because of her pregnancy and/or because she had recently taken FMLA maternity leave.

58.     During the July 24, 2021, meeting, Mummert told Plaintiff that she had two (2) weeks to improve her store but that Defendants knew this would not happen so she should start looking for a new job.

59.     On August 5, 2021, in an email to Mummert, Almeida, Santiago, Wayne Packer (male), Regional Human Resources Manager, Sharon Williams (female), Divisional Human Resources Manager, and Glenda Fleming Willis (female), Divisional Manager, Plaintiff complained of pregnancy discrimination and retaliation for having taken FMLA maternity leave, stating, *inter alia*:   "Let this letter serve as a written compliant regarding the discrimination against me for having a baby and going on maternity leave. I have worked for Walmart 11 years and have never had any disciplinary actions, until I came back from maternity leave. Since returning from

8

leave I have been given three disciplinary actions with a two week notice of termination. I feel as I am being singled out due to taken maternity leave[.]"

60.    Shortly thereafter, Plaintiff received an email response from Packer acknowledging receipt of her discrimination complaint and advising her that her "concerns" had been sent to Defendants' Ethics team for "review and consideration."

61.    On August 5, 2021, following her email and following Packer's response to same, during a meeting with Mummert and Santiago, Defendants terminated Plaintiff's employment, effective August 14, 2021.

62.    The stated reason for her termination was performance.

63.    During her termination meeting, Plaintiff requested to remain employed at Defendants, including in a lower-level position or at a different location.

64.    Despite Plaintiff's stated willingness to be demoted or transferred, Defendants refused Plaintiff any opportunity to remain employed at the company.

65.    Defendants terminated Plaintiff because of her pregnancy, her FMLA maternity leave, and because she complained of pregnancy discrimination.

66.    Defendants refused to transfer Plaintiff and/or demote Plaintiff to enable her to remain employed at the company because of her pregnancy, her FMLA maternity leave, and because she complained of pregnancy discrimination.

67.    On August 10, 2021, in an email to Mummert and Santiago, Plaintiff stated the following:

> Following up from the termination meeting, I am sending this email in hopes that you will reconsider my request to allow me to step down from Store Manager to an hourly position, instead of terminating my employment at Walmart. Walmart is my career and I have worked very hard to get where I was, and would like to continue my employment with Walmart. I feel that my termination was wrongful due to pregnancy

discrimination, and that I was not given the opportunity to step down as other Store Managers have. I would be willing to relocate to another store, Palmyra, East York, Harrisburg, or Fruitville Pike. I hope you will take this request into consideration and I will hear back from you before my termination is completed in the system.

68.    On August 11, 2021, in response to Plaintiff's email, Mummert stated that he would "forward [Plaintiff's] concern to the regional office."

69.    On August 17, 2021, in a phone call with Michele Haigler ("Haigler"), Global Investigations U.S., Plaintiff again complained of pregnancy discrimination in connection with her termination and the disciplinary actions which preceded same.

70.    During her call with Haigler, Plaintiff explained how she was unjustly criticized by Defendants following her return from FMLA maternity leave, including, among other things, being reprimanded for there being freight on the backroom floor. In response, Haigler stated that this should not have been an issue because, based on her experience in the field, there was always freight on the backroom floor.

71.    During the call with Haigler, upon Haigler's request, Plaintiff provided names of Store Managers who Plaintiff was aware of having freight on their backroom floors and whose stores suffered from similar issues to those Plaintiff was criticized for but were not, to Plaintiff's knowledge, disciplined. Haigler stated that she would use this information to review relevant surveillance footage in connection with Defendants' investigation into her complaint.

72.    During the call, Haigler asked Plaintiff what she was looking for from the investigation and Plaintiff stated that she wanted to continue working at Defendants and stated that she was willing to step down to an hourly position.

73.    At the end of the call, Haigler stated that she would contact Plaintiff after she completed her investigation.

74.     Plaintiff received no further communication from Haigler.

75.     On September 16, 2021, Plaintiff called Haigler for an update on the status of Defendants' investigation. Haigler told Plaintiff to contact the ethics hotline for an update.

76.     That same day, Plaintiff called the ethics hotline and was told that she could not obtain any information on Defendants' ethics investigation without a reference number.

77.     On September 16, 2021, Plaintiff emailed Packer requesting a reference number for Defendants' ethics investigation. Plaintiff explained that she had called the ethics hotline for an update but was unable to obtain any information without the reference number.

78.     On September 24, 2021, in an email, Packer provided Plaintiff with a reference number.

79.     After receiving the reference number, Plaintiff called back the ethics hotline to obtain an update on Defendants' investigation but the reference number was invalid.

80.     On October 5, 2021, Packer emailed Plaintiff stating that he had received the results of Defendants' investigation into Plaintiff's discrimination complaints and requested to set up a time to discuss same with Plaintiff.

81.     On October 6, 2021, during a phone call, Packer told Plaintiff that Defendants' investigation had concluded and that her allegations of pregnancy discrimination were found to be unsubstantiated due to a lack of evidence.

82.     Defendants failed to take any action to remedy or prevent the discrimination and retaliation to which Plaintiff was subjected.

83.     Prior to becoming pregnant and taking an FMLA maternity leave, Plaintiff had no performance or disciplinary issues and was never advised that her job was in jeopardy.

84.     At the time of her termination, the following individuals, in addition to Plaintiff, reported to Mummert:

     a.  Steve Myers, Store Manager;

     b.  Lance Ransom, Store Manager;

     c.  Dennis Swope, Store Manager;

     d.  Dennis Colbert, Store Manager;

     e.  Crystal Yeagley, Store Manager;

     f.  Carolann Craft, Store Manager;

     g.  Renee Lauthers, Store Manager;

     h.  Shanna Wonder, Store Manager;

     i.  Susan Bohart, Store Manager;

     j.  Jenna Trotta, Store Manager;

     k.  Heather Manges, Store Manager.

85.     Plaintiff was qualified to perform the jobs of each Store Manager reporting to Mummert at the time of her termination.

86.     To Plaintiff's knowledge, none of the other employees reporting to Mummert at the time of her termination were recently pregnant, had recently taken an FMLA leave, and/or had recently complained of discrimination.

87.     Plaintiff was the only employee notified of termination by Defendants on August 5, 2021.

88.     Defendants did not provide any explanation to Plaintiff as to why she was terminated while retaining all employees who were not recently pregnant, had not recently taken an FMLA leave, and/or had not recently complained of discrimination.

89.    Following her termination, Defendants replaced Plaintiff with Dennis Colbert ("Colbert") – an outside hire.

90.    Plaintiff was more qualified to perform her position than Colbert.

91.    By requiring Plaintiff to perform work while she was out on FMLA leave, Defendants interfered with Plaintiff's rights under the FMLA.

92.    By terminating Plaintiff's employment after exercised her right to take FMLA maternity leave, Defendants retaliated against Plaintiff for invoking her rights under the FMLA.

93.    Defendants' violations of the FMLA were willful.

94.    Plaintiff's pregnancy was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including, without limitation, in connection with her termination.

95.    Plaintiff's exercise of her rights under the FMLA was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including, without limitation, in connection with her termination.

96.    Plaintiff's complaint of pregnancy discrimination was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including, without limitation, in connection with her termination.

97.    As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred and may in the future incur a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

98.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

99.    Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

100.    The conduct of Defendants, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendants.

## COUNT I – TITLE VII

101.    Plaintiff incorporates by reference paragraphs 1 through 100 above, as if set forth herein in their entirety.

102.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated Title VII.

103.    Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

104.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

105.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

106.    No previous application has been made for the relief requested herein.

## COUNT II – FMLA

107.    Plaintiff incorporates by reference paragraphs 1 through 100 above, as if set forth herein in their entirety.

108.    By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

109.    Defendants' conduct was retaliatory and/or interfered with Plaintiff's rights under the FMLA.

110.    Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

111.    The imposition of liquidated damages is warranted.

112.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

113.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless and until this Court grants the relief requested herein.

114.    No previous application has been made for the relief requested herein.

## COUNT III – PHRA

115.    Plaintiff incorporates by reference paragraphs 1 through 100 above, as if set forth herein in their entirety.

116.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the PHRA.

117.    Said violations were intentional and willful.

118.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

119.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

120.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

    a.    Declaring the acts and practices complained of herein to be in violation of Title VII;

    b.    Declaring the acts and practices complained of herein to be in violation of the FMLA;

    c.    Declaring the acts and practices complained of herein to be in violation of the PHRA;

    d.    Enjoining and permanently restraining the violations alleged herein;

    e.    Entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

    f.    Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendants' improper conduct;

    g.    Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendants' improper conduct;

16

h.  Awarding punitive damages to Plaintiff;

i.  Awarding liquidated damages to Plaintiff;

j.  Awarding Plaintiff other such damages as are appropriate under Title VII, the FMLA, and the PHRA;

k.  Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

l.  Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW LLC**

Dated: <u>May 26, 2023</u>                    By:    <u>*/s/ Rahul Munshi*</u>
                                                    Rahul Munshi, Esquire
                                                    Holly W. Smith, Esquire
                                                    1525 Locust Street, 9th Floor
                                                    Philadelphia, PA 19102
                                                    (215) 545-7676

                                                    *Attorneys for Plaintiff,*
                                                    *Karle Eck*

# Exhibit 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

COMPLAINANT:                                      :
                                                  :
**KARLE ECK**                                     :            Docket No.
                                                  :
v.                                                :
                                                  :
RESPONDENTS:                                      :
                                                  :
**WALMART INC.**                                  :
                                                  :
and                                               :
                                                  :
**WAL-MART ASSOCIATES, INC.**                     :
                                                  :

1.  The Complainant herein is:

    Name:        Karle Eck

    Address:     ██████████
                 Elizabethtown, PA 17022

2.  The Respondents herein are:

    Names:       Walmart Inc.; Wal-Mart Associates, Inc.

    Address:     2034 Lincoln Highway East
                 Lancaster, PA 17602

3.  I, Karle Eck, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female), pregnancy, and disability (including history of and

regarded as), and retaliation because of my sex and pregnancy discrimination complaints, as set

forth below.

**Discrimination and Retaliation**

A. **I specifically allege:**

[1]    I began working at Respondents on or about September 18, 2010.

[2]    I last held the position of Store Manager.

[3]    I consistently performed my job duties in a highly competent manner.

[4]    I last reported to Randall Mummert (male), Market Manager.  Mummert reported to Ann-Louise Almeida (female), Regional Manager.

[5]    In or about September 2017, I began reporting to Mummert.

[6]    Mummert had no role in my being hired at Respondents.

[7]    In addition to me, the following employees reported to Mummert at the time of my termination.  I was more qualified to do each of these employee's positions.

      a)  Steve Myers (male), Store Manager;

      b)  Lance Ransom (male), Store Manager;

      c)  Dennis Swope (male), Store Manager;

      d)  Dennis Colbert (male), Store Manager;

      e)  Crystal Yeagley (female), Store Manager;

      f)  Carolann Craft (female), Store Manager;

      g)  Renee Lauthers (female), Store Manager;

      h)  Shanna Wonder (female), Store Manager;

      i)  Susan Bohart (female), Store Manager;

      j)  Jenna Trotta (female), Store Manager;

      k)  Heather Manges (female), Store Manager.

[8]    On February 22, 2019, I received a Solid Performer performance rating.

[9]     On or about December 10, 2019, I informed Mummert that I was pregnant and expecting my first child.

[10]    In or about January 2020, I told Mummert that I was due to give birth on August 13, 2020, and that I planned to take maternity leave.

[11]    When I was visibly pregnant during COVID-19, customers yelled at me, told me to go home, and told me that I should not be working.

[12]    When I was visibly pregnant during COVID-19, Mummert instructed me to avoid large groups of customers.

[13]    On or about February 28, 2020, I received a Needs Improvement performance rating.  My performance did not warrant a Needs Improvement rating.

[14]    On August 7, 2020, I went out of work on maternity leave.

[15]    From August 7, 2020 to December 7, 2020, I was out of work on maternity leave.

[16]    While I was out of work on maternity leave, I was contacted by Mummert, Kayla Royce (female), Market Coordinator, and other employees for help regarding store issues and questions.

[17]    While I was out of work on maternity leave, Respondents transferred two (2) of my direct reports to another store and did not replace them at my store.

[18]    Before I went out on maternity leave, my store was one (1) of Respondents' top stores in store and market metrics, sales, process execution, and feedback. Other Store Manager employees were encouraged to reach out to me to learn how to improve their stores.

[19]    On December 7, 2020, I returned to work from my maternity leave.

[20]     In mid-December 2020, following my return to work, I contracted COVID-19 and was out of work for two (2) weeks, on medical leave, due to the same.

[21]     On December 29, 2020, I reminded Mummert that I was using one (1) week of my earned paid time off in January 2021, which I had planned previously, as my daughter's daycare was closed that week. Mummert was visibly irritated that I was taking time off work so soon after returning from maternity leave and medical leave. I told him that, if I had childcare, I would work, but that I did not have anyone to care for my daughter. He told me that I should use care.com to find someone to watch my daughter. I stated that I did not feel comfortable having a stranger watch my daughter and I had this week off planned in advance.

[22]     After I returned to work from maternity leave and medical leave, I was treated differently and worse, and in a more hostile and dismissive manner, than male employees, disabled employees, and/or employees who had not recently been pregnant or taken maternity or medical leave were treated.

[23]     I was held responsible for issues that arose while I was out of work on maternity and medical leave.

[24]     My performance was unjustly criticized.

[25]     I was blamed for issues outside of my control.

[26]     I was reprimanded for having freight on the backroom floor despite Mummert instructing me to have employees place freight on the backroom floor and despite other Store Manager employees having the same issue and not being reprimanded for it.

[27]     I requested and was denied additional help at my store.

[28]     Nondisabled, male employees, including Myers (male), received help at their stores.

[29]    Unlike me, Bryan Beistline (male), Store Lead, who took over my job duties and responsibilities while I was on maternity leave, was not unjustly criticized for the condition of the store.

[30]    While I was out on leave, several of my direct reports had either separated from Respondents or been transferred to another store and were not replaced at my store.

[31]    On March 19, 2021, in a phone call with Royce and other Store Manager employees, I asked why employees from my store were being transferred to assist another store when I had been requesting and had been denied additional support at my store. I received no answer to my question.

[32]    On March 25, 2021, in a meeting with Mummert and Deb Peasley (female), Digital Market Coach, I was placed on a First Disciplinary Action. My performance did not warrant a Disciplinary Action. The stated reason was job performance/productivity. I was falsely told that I was combative with employees.

[33]    Similarly situated male employees, nondisabled employees, and/or employees who had not recently been pregnant or taken maternity leave or medical leave were not placed on a Disciplinary Action.

[34]    Respondents placed me on a Disciplinary Action because of my sex and/or my pregnancy and/or my disability and/or my having taken maternity leave and/or medical leave.

[35]    On May 13, 2021, in a meeting with Mummert and Jessica Santiago (female), Market Human Resources Manager, I was placed on a Second Disciplinary Action. My performance did not warrant a Disciplinary Action. The stated reason was job performance/productivity. I was blamed for employees calling out of work and was told that it was because of my leadership.

[36]     Similarly situated male employees, nondisabled employees, and/or employees who had not recently been pregnant or taken maternity leave or medical leave were not placed on a Disciplinary Action.

[37]     Respondents placed me on a Disciplinary Action because of my sex and/or my pregnancy and/or my disability and/or my having taken maternity leave and/or medical leave.

[38]     I complied with the Disciplinary Action and prepared and discussed my action plan with Mummert and Santiago.

[39]     From June 1 to 19, 2021, I went out of work on a medical leave of absence due to the hostile work environment to which I was subjected because of my sex, pregnancy, disability, and/or having taken maternity leave and/or medical leave.

[40]     On July 24, 2021, in a meeting with Mummert and Santiago, I was placed on a Third Disciplinary Action.  My performance did not warrant a Disciplinary Action.  The stated reason was job performance/productivity.  I was told that I had two (2) weeks to improve my store, but that they knew that this would not happen, so I should start looking for a new job.

[41]     Similarly situated male employees, nondisabled employees, and/or employees who had not recently been pregnant or taken maternity leave or medical leave were not placed on a Disciplinary Action.

[42]     Respondents placed me on a Disciplinary Action because of my sex and/or my pregnancy and/or my disability and/or my having taken maternity leave and/or medical leave.

[43]     I complied with the Disciplinary Action and prepared and sent to Mummert and Santiago my action plan.

[44]     I received no response to my action plan.

[45]        Mummert and Santiago ignored my requests and proposal to hire an

additional employee to assist at my store.

[46]        On August 5, 2021, in an email to Mummert, Almeida, Santiago, Wayne

Packer (male), Regional Human Resources Manager, Sharon Williams (female), Divisional

Human Resources Manager, and Glenda Fleming Willis (female), Divisional Manager, I

complained of pregnancy discrimination.  I stated the following:

> Let this letter serve as a written compliant regarding the discrimination
> against me for having a baby and going on maternity leave. I have
> worked for Walmart 11 years and have never had any disciplinary
> actions, until I came back from maternity leave. Since returning from
> leave I have been given three disciplinary actions with a two week
> notice of termination. I feel as I am being singled out due to taken
> maternity leave over Thanksgiving and then to return and go back out
> on leave two weeks later over Christmas due to testing positive for
> COVD-19 [sic]. Since returning from leave I have not been treated the
> same as before I left for leave. Store conditions where deplorable when
> I returned from leave, along with the store being severely understaffed.
> I was told by Market Manager Randy multiple times not to ask for
> help because I am not getting any help and need to figure it out. I was
> told associates could not come to my store to help due to COVID-19
> and no associates traveling. On March 17th, I was contacted on my
> day off that associate needed to be sent to another store outside of our
> market to help that store with freight. When no one replied there was a
> conference call scheduled on March 19th with the market to find
> associates to travel to those other stores. When asked who I was
> sending on the call I asked the Market Coordinator why I am being
> asked to send help to other stores when I am told I am not allowed to
> have help and that I am in desperate need of help. I was not given an
> answer on why I was not allowed to have help. On March 25th, six
> days later I was given a disciplinary action for job performance and
> told I am combative with market team members. On May 13th I was
> given a second disciplinary action for having freight on the backroom
> floor and not being on process. During my disciplinary action I was
> told I was the only store with freight on the floor and not on process
> after I questioned this being in multiple stores that week and saw that
> half the stores in the market also had pallets on the floor not on
> process. On May 19th, while completing my action plan and covering
> it with market manager randy and human resource manager Jessica,
> Randy stated, you're going to have freight on the floor Karle, everyone
> does with the freight flow coming in. Due to the stress of the

disciplinary actions and being treated unfairly with the threat of being terminated any day I had to seek medical attention and take a two week leave from work while I met with a counselor and began medication to help deal with my situation at work. After returning to work I was given a third disciplinary action three weeks after my return, being told that I have two weeks to improve at work and they know it is not going to happen. I continue to be discrimination against due to having a baby and being on maternity leave that I am being singled out and held accountable for issues that other stores within the market are also facing and no accountability has been held for others. I continue to go to other stores within the market and see the same standards and some that or worse and I am the only Managers being held accountable let alone being fired. I know that I will more than likely be fired today. Every time I have been coached market manager Randy has sneaked into the store when I was off or when he thought I would be gone for the day to walk the store quickly and take pictures. As he was here at 5:30 pm on Tuesday night I know that I will be getting fired as this has been the trend.

[47]    On August 5, 2021, in a response email from Packer, he stated the following: "Thank you for reaching out with your concerns. I have sent your email to our Ethics team for review and consideration. Please do not hesitate to reach out to me directly as our Ethics team reviews your concerns."

[48]    On August 5, 2021, following my above email, in a meeting with Mummert and Santiago, I was terminated, effective August 14, 2021. The stated reason was job performance. I requested to remain employed with Respondents in a lower-level position or in a different location. I stated that I was willing to be demoted or transferred to remain employed. Respondents refused to allow me to remain employed.

[49]    Respondents terminated my employment because of my sex, pregnancy, disability, maternity leave, medical leave, and/or sex and pregnancy discrimination complaints.

[50]    Respondents refused to transfer me or demote me, so that I could remain employed, because of my sex, pregnancy, disability, maternity leave, medical leave, and/or sex and pregnancy discrimination complaints.

[51]    Respondents subjected me to a hostile work environment because of my

sex, pregnancy, disability, and/or maternity or medical leave.

[52]    On August 10, 2021, in an email to Mummert and Santiago, I stated the

following:

> Following up from the termination meeting, I am sending this email in
> hopes that you will reconsider my request to allow me to step down
> from Store Manager to an hourly position, instead of terminating my
> employment at Walmart. Walmart is my career and I have worked
> very hard to get where I was, and would like to continue my
> employment with Walmart. I feel that my termination was wrongful
> due to pregnancy discrimination, and that I was not given the
> opportunity to step down as other Store Managers have. I would be
> willing to relocate to another store, Palmyra, East York, Harrisburg, or
> Fruitville Pike. I hope you will take this request into consideration and
> I will hear back from you before my termination is completed in the
> system.

[53]    On August 11, 2021, in an email from Mummert, copying Santiago, he

stated that he would "forward [my] concern to the regional office."

[54]    On August 17, 2021, in a phone call with Michele Haigler (female),

Global Investigations U.S., I complained of pregnancy discrimination in connection with my

termination and the disciplinary actions that I was issued. I stated that, following my maternity

leave, I was unjustly criticized, among other things, for freight on the backroom floor. She

responded that, from her experience in the field, there was always freight on the backroom floor,

so that should not have been an issue. She stated that she could look for the video at each

location and timeframe I described. She asked for the names of Store Manager employees that

told me they also had freight on their backroom floors but were not criticized for it, and asked for

the names of stores that I was aware of that had freight, zoning, and cleanliness issues but whose

Store Manager employees were not disciplined. When she asked what I was looking for from

this investigation, I told her that I wanted my job back and was willing to step down to an hourly

position. I told her that, despite my requests, no one responded to me about the same. She told me I she would contact me after she completed her investigation.

[55]    I received no further communication from Respondents.

[56]    I had no opportunity to remain employed with Respondents.

[57]    I was the only employee reporting to Mummert who was terminated effective August 14, 2021.

[58]    All other employees reporting to Mummert—all of whom were male and/or nondisabled and/or had not recently been pregnant and/or had not recently been out of work on maternity leave or medical leave and/or had not engaged in protected activity—were retained when I was terminated.

[59]    Before notifying Respondents of my pregnancy and taking maternity and medical leave, I had no disciplinary or performance issues.

[60]    Before notifying Respondents of my pregnancy and taking maternity and medical leave, I had no indication that my job was in jeopardy.

[61]    Respondents replaced me with Dennis Colbert (male). I was more qualified to perform my position than the nondisabled male employee who had not recently taken maternity leave or medical leave or engaged in protected activity with whom I was replaced.

[62]    Respondents failed to take any action to remedy or prevent the sex, pregnancy, and disability discrimination and retaliation to which I was subjected.

[63]    Respondents' sex, pregnancy, and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[64]    Respondents' comments and conduct evidence a bias against female and/or pregnant and/or disabled employees and/or employees who take maternity and/or medical leave and/or engage in protected activity.

[65]    Respondents have an underrepresentation of female employees in high level positions.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female), pregnancy, and disability (including history of and regarded as) and retaliated against me because of my sex and pregnancy discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Code of the City of Lancaster, § 125-1, *et seq.* ("Code").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

    **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

    ____    Section 5.1 Subsection(s) _____

    ____    Section 5.2 Subsection(s) _____

    ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

**_X_**  **This charge will be referred to the EEOC for the purpose of dual filing.**

6. The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

9/2/21

(Date Signed)

(Signature)    Karle Eck

Elizabethtown, PA 17022

# Exhibit 2

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

| To: **Karle Eck** | From: **Philadelphia District Office** |
|---|---|
| ██████ | 801 Market St, Suite 1000 |
| **Elizabethtown, PA 17022** | Philadelphia, PA 19107 |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2022-60026** | **Damon Johnson,** | **(267) 589-9722** |
| | **State, Local & Tribal Program Manager** | |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
3/1/2023

**Karen McDonough**
**Deputy District Director**

Enclosures(s)

cc:   **For Respondent**
Julie Wilson, Esq.
Littler Mendelson PC
2301 McGee St.
Kansas City, MO 64108

**For Charging Party**
Emily R Derstine Friesen, Esq.
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102