## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KARLE ECK, | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO.: 2:23-cv-02033 |
| v. | : |
| | : |
| WALMART INC. and | : |
| WAL-MART ASSOCIATES, INC. | : |
| | : |
| Defendants. | : |

## REPLY BRIEF OF DEFENDANTS, WALMART INC. AND WAL-MART ASSOCIATES, INC. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Walmart Inc. and Wal-Mart Associates, Inc., by and through their undersigned counsel, respectfully submit this brief reply to address Plaintiff's misstatements of law and to correct mischaracterizations of the record in Plaintiff's opposition to Defendants' Motion for Summary Judgment.

## I.    INTRODUCTION

Defendants are entitled to summary judgment since Plaintiff has failed to identify a genuine issue of material fact to defeat summary judgment. Contrary to Plaintiff's claims, the present matter is not one of those instances where the Third Circuit has held that summary judgment is to be used sparingly. (Doc. 31, p. 21 *citing Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 368-69 (3d Cir. 2008)). Plaintiff's reliance upon *Doe* for this premise is misplaced since the record in this case, unlike that of *C.A.R.S.*, is devoid of both: (1) a negative stray remark by a decision-maker that could raise an inference of a discriminatory motive for the adverse action; and (2) an unusually suggestive temporal proximity between the adverse employment action and protected activity. *Cf. C.A.R.S.*, 527 F.3d at 369 (plaintiff was

discharged only three working days after having an abortion and after a supervisor commented that plaintiff "didn't want to take responsibility" after learning of plaintiff's abortion).

Plaintiff incorrectly states in her opposition that Defendants failed to identify the metrics that factored into Plaintiff's termination of employment and yet wholly ignores the detailed PowerPoint presentation that her supervisor Randall Mummert ("Mummert") created to summarize the many issues in support of Plaintiff's termination. Plaintiff also unsuccessfully attempts to establish that the undisputed reasons for Plaintiff's termination of employment were pretext for discrimination by arguing that Walmart's decision was "wrong" and by relying upon mere conclusory allegations and Plaintiff's self-serving testimony. Plaintiff also attempts to sanitize the record by misrepresenting and excluding relevant portions of witness deposition testimony and ignoring the key areas where Plaintiff failed to execute her professional responsibilities. Throughout the opposition, Plaintiff cites Plaintiff's prior favorable performance reviews and isolated incidents where the Lancaster Store met Company standards to make the uncompelling argument, "*once a good employee always a good employee.*" In sum, Plaintiff attempts to create the illusion that there are genuine issues of material fact by ignoring the cumulative evidence of record.

## II.    PLAINTIFF FAILS TO ESTABLISH THAT THE REASONS FOR HER TERMINATION OF EMPLOYMENT WERE PRETEXT FOR DISCRIMINATION

Plaintiff unpersuasively argues that a reasonable jury could conclude that the stated reasons for her termination are pretextual because she "was not the least successful Store Manager in Market 233 at the time of her termination." (Doc. 31, p. 23). Plaintiff is essentially arguing that Walmart got it wrong. Plaintiff's position is flawed both legally and factually.

First, Plaintiff's mere disagreement with the reasons for her discipline and subsequent termination does not establish that the reasons for her termination were pretextual. *See Mercer v.*

*SEPTA*, 608 Fed. Appx. 60, 65 (3d Cir. 2015) (holding that plaintiff's disagreement with the bases for his Last Chance Agreement does not demonstrate that the reasons for termination were pretextual). It is not enough for Plaintiff to show that the proffered reason was wrong; instead, Plaintiff must show that it was so plainly wrong that it cannot have been Walmart's reason. *Keller v. Ortiz Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Second, Plaintiff's argument is belied by the evidence of record. Plaintiff incorrectly claims that Walmart has not described "what, if any, metrics they relied upon to determine that Plaintiff was ranked number 12 of 12 in Market 233." (Doc. 31, p. 23). Plaintiff then contradicts herself by asserting that she was "typically middle of the pack on nearly every store metric calculated and distributed by Walmart." (*Id.* at 23). Contrary to Plaintiff's retelling, the metrics by which Plaintiff's performance was evaluated were laid out in specific detail in the Termination PowerPoint Presentation that Mummert prepared for management. (Doc. 30, SUMF, ¶¶113 and 114). Plaintiff baldly asserts that she was "middle of the pack" in nearly every store metric calculated and distributed by Walmart; but in support of this assertion, Plaintiff only relies upon snapshots of Store 2334's Online Grocery Pickup and Delivery (OGP) metrics for select weeks of 2021. (Doc. 31, ¶¶215, 248, 255, and 268). The OGP metrics were merely one segment of the many metrics that management relied upon in evaluating Plaintiff's performance. (Doc. 30, SUMF 114). Plaintiff blatantly ignores the observations and Declaration of Market Asset Protection Operations Lead Jennifer O'Brien, whom Plaintiff elected not to depose during discovery. (*Id.* at ¶114(c)). Documentation and related correspondence concerning Store 2334's routine lack of associate engagement, high-shrink numbers, high accident reviews, late modulars, and excess freight were all disclosed to Plaintiff. (*Id.* ¶¶62-82). Plaintiff accuses Defendant of "viewing each piece of evidence in a vacuum" when in reality

3

Plaintiff focuses solely upon her store's performance in a single department and argues that her store was not last in each of the metrics for that single department; however, the record evidence demonstrates that the stated bases for Plaintiff's discipline and termination were not because Store 2334 was the worst performing store in each OGP metric. (Doc. 30, ¶¶105-110, 120-21). Further, Plaintiff's argument that Walmart could only terminate Plaintiff's performance if she was the worst performing Store Manager in each and every store metric calls for the Court to employ a new test for evaluating an employer's personnel decisions. Plaintiff's argument fails because it is not for the Court to determine whether the separation of Plaintiff was "wise, prudent, shrewd, or competent" but rather whether the decision was motivated by discriminatory animus. *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1994). Plaintiff has not met her burden.

Likewise, Plaintiff's claim that a reasonable jury could conclude that Mummert "continued to move the goalposts on Plaintiff, stymying her ability to succeed while on discipline" is contradicted by the evidence of record. (Doc. 31, p. 25). As evidenced by Plaintiff's Yellow, Orange, and Red Coachings, Plaintiff consistently failed to develop and execute a plan for processing freight, which adversely affected shrink and process execution, leading to poor store standards and lack of merchandise being accounted for in the store. (Doc. 30, SUMF, ¶¶105-110, 120-121). Critically, Plaintiff does not dispute the documented conditions in her store that led to her discipline and termination; instead, Plaintiff just baldly argues that the discipline was given because of her pregnancy and maternity leave. (Doc. 31, ¶¶105-110).

In addition, Plaintiff's reliance upon non-binding authority for the premise that Mummert's purported "unrealistic goals" for her is evidence of pretext is misplaced. (Doc. 31, p. 25) (citing *Ciecka v. Cooper Hosp. Sys.*, No. 15-4075, 2017 WL 656727 (D.N.J. Feb. 14,

2017) and *Beeler v. Norton Healthcare*, 17-573, 2020 WL 1265419 (W.D. Ky Mar. 16, 2020)). In *Ciecka*, the plaintiff claimed she was put on a PIP with unrealistic goals when she was expected to perform simultaneous surgeries without any assistance from a colleague. 2017 WL 656727 at *7. Similarly, in *Beeler* the plaintiff was put on a PIP and required to complete a project by herself that could not be completed within the timeframe of the PIP. 2020 WL 1265419 at *4. The facts of those respective cases are distinguishable from those of the instant matter.

Here, in contrast to the employers in *Ciecka* and *Beeler*, Mummert did not expect Plaintiff to perform multiple, complex tasks simultaneously or complete a large project alone in a short amount of time. Instead, Mummert asked Plaintiff to effectively develop and execute a plan of action for processing freight and improving store conditions and communicate the plan to her staff. Plaintiff had eight months with the help of both her staff and staff from other stores to execute a plan for processing freight and timely completing price changes and modular turnovers. Plaintiff's failure to demonstrate notable improvement in Store 2334 led to her termination of employment. (Doc. 30, SUMF, ¶¶112 – 114).

Lastly, to the extent that Plaintiff claims Walmart was inconsistent in its discipline by not disciplining other store managers for having pallets on the sales floor, Plaintiff relies solely upon her own self-serving deposition testimony to support this claim. (Doc. 31, ¶¶234, 246, 254, and 267). This claim is further undermined by the four other store managers that Mummert disciplined for not effectively executing a plan to process freight. (Doc. 30, SUMF, ¶¶146, 150, 151, 152, 155, 157, 158, 159).

III.    **PLAINTIFF MISREPRESENTS THE RECORD IN HER OPPOSITION**

In Plaintiff's opposition, Plaintiff misrepresents the testimony of both Randall Mummert and Debora Peasley. First, Plaintiff argues that Mummert "believed that Plaintiff maternity leave

would result in a disruption to the normal flow of business at the Lancaster Store" and "considered the possibility that Plaintiff would get pregnant again and take another maternity leave." (Doc. 31, p. 14). In reality, Mummert testified as follows:

> Q.  Do you believe that if a store manager, any store manager is out on an extended medical leave, there could be a disruption to the normal flow of business?
>
>    MR. KINCADE:  Objection to form. You can answer.
>
>    THE WITNESS:  Any time the store manager, who has a vested interest in their store, there is disruption to the business because, you know, they are the ones that, you know, give a lot of direction, a lot of the followup to make sure that things do happen in the store.
>
>    But if we are developing our team and working through the processes to develop them, that the store manager should be able to step out of their store and still things should be run effectively in the building.

(S-APPX000216, 42:6-23).

Contrary to Plaintiff's argument, Mummert did not testify that he believed Plaintiff's maternity leave would result in a disruption to the normal flow of business but rather that there should be no disruption if any store manager is properly developing the team and working through the processes to develop the team.

Additionally, Mummert never testified that he considered the possibility that Plaintiff would get pregnant again and take another maternity leave. Rather, Mummert testified as follows:

Q.  Knowing Miss Eck's ballpark age, that she had recently gotten married, that she was now pregnant with her first child, did you ever consider that Miss Eck may have another child in the future?

MR. KINCADE:  Objection to form. You can answer.

THE WITNESS:  I mean I'll be happy for anyone who wants to have more children in their family, and if that's her choice, then I would be elated for her and happy for her with it, absolutely.

BY MR. MUNSHI:

Q.  I understand that.  You mentioned that you have two children.  I have two children.

My question is knowing Miss Eck's ballpark age, that she recently got married, that she was pregnant with her first child, did you ever think that she may get pregnant again and have a second child?

A.  I guess it is a possibility, but did I ever think that the fact that she had more children, it is still her choice what she wants to do with that and then support whatever decision she makes.  If she wants to have more children, then I would be, like I said, ecstatic for her.  I would be.

Q.  Did you ever consider, knowing Miss Eck's age, that she recently got married and was having her first kid, that Miss Eck at some point might be a stay-at-home mother?

MR. KINCADE:  Objection to form. You can answer.

THE WITNESS:  Again, having a wife who is a stay-at-home mom, I'd be proud of either way that she wants to do it.  You know, if she wants to be a mom who works, I'd be happy for that too, as well as a stay-at-home mom.  It is still Karle's decision what she wants to do with her husband's -- with it and be happy for her for

```
both choices that she makes and for both
decisions.
BY MR. MUNSHI:
     Q.  Certainly you understood based on
your own experiences that if Miss Eck was
pregnant with a second child she would likely
take maternity leave again; correct?
     A.  Yes, that's correct.  Uh-huh.
```

(S-APPX000217-219, 43:23 – 45:8).

As the transcript evidences, Mummert never considered whether Plaintiff would have more children.  Instead, Mummert testified that he would be happy for Plaintiff if she had more children and would support her in whatever decision she made.

Second, Plaintiff argues Debora Peasley's observations noted in the Termination Recommendation PowerPoint should be discredited in part because, according to Plaintiff, Peasley testified that it was possible that her observations occurred while Plaintiff was out on maternity leave and Beistline was in charge of the Lancaster Store.  (Doc. 31, ¶114, p. 74). Tellingly, Plaintiff wholly ignores Peasley's answer to Plaintiff's own counsel's follow-up questions in which Peasley unequivocally testified to two key facts:  (1) Peasley's observations occurred over the course of multiple visits made when Plaintiff was not on maternity leave; and (2) Peasley saw improvement in the store when Bryan was running store while Plaintiff was on maternity leave.  For example, Peasley testified as follows:

8

```
      Q.  Is it possible that the visits that
you observed, the zone issue, was when Karle
was on maternity leave?
            MR. KINCADE:  Objection to form.
            You can answer.
            THE WITNESS:  No.  Because Bryan
was doing a pretty good job when Karle was on
maternity leave.  He had the store together.
Saw improvement when Bryan was there when
Karle was on maternity leave.
BY MS. SMITH:
      Q.  So you can't recall when these
conversations happened, but you are certain
that it wasn't when Karle was on maternity
leave?
      A.  What do you mean?  I just said that
when -- I just said that -- you asked me -- I
just said that when Bryan was there, when she
was on maternity leave, you could see that
there was an improvement in the store when
Bryan was running the store while she was on
maternity leave.  That's all I said.
```

(Appx. 000359, Peasley Dep. 133: 3-24).

Next, Plaintiff erroneously argues Walmart terminated four of the five store managers under Mummert's supervision that took FMLA leave between August 1, 2018, and August 1, 2021.  (Doc. 31, ¶292).  Discovery in this case revealed that of the five managers that took leave only Plaintiff and Wynne Cloud were involuntarily terminated for cause by Walmart.  (Doc. 30, SUMF, ¶¶153-154; Mummert Dep. Appx. 000354, 212:9-12; Appx. 000355, 236:21-24, Appx.000366-372, WM-ECK_000445).

Last, Plaintiff argues two assistant managers were removed from the Lancaster store during Plaintiff's maternity leave seemingly to shirk responsibility for her own poor performance prior to and after returning from leave.  Plaintiff fails to disclose the reasons for their removal as part of a failed attempt to raise an inference of a retaliatory motive for the personnel move.  (Doc. 31, ¶¶226; S-APPX000248).  The record evidence demonstrates that the two managers were removed as part of a restructuring since the Lancaster Store was overstaffed with three

additional assistant managers before Plaintiff even went on a leave of absence. (S-APPX000248, 216:14-24). The motivation reason for the restructuring belies any inference of discriminatory animus.

## IV.    CONCLUSION

Based upon the foregoing and for reasons previously set forth in Defendants' Motion for Summary Judgment, Defendants respectfully request that this Honorable Court grant their Motion and enter judgment in favor of Defendants.

Respectfully submitted,

*/s/ Michael J. Kincade, Jr.*
Michael J. Kincade, Jr., Esquire (I.D. 307983)
**BUCHANAN INGERSOLL & ROONEY PC**
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
(215) 665-8700 (telephone)
michael.kincade@bipc.com.
*Attorneys for Defendants,*
*Walmart Inc. and Walmart Associates, Inc.*

Date: July 8, 2024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Defendants' Motion for Leave to File a Reply in Support of their Motion for Summary Judgment were served upon all counsel of record via this Court's CM/ECF system.

BUCHANAN INGERSOLL & ROONEY PC

Dated:  July 8, 2024                    /s/ Michael J. Kincade, Jr
                                        Michael J. Kincade, Jr.

4888-2228-1761, v. 1

**In The Matter Of:**

*KARLE ECK v.*

*WALMART, INC.*

---

*RANDALL MUMMERT*

*May 14, 2024*

---

*Terry Burke Reporting*

*Registered Professional Reporters*

*terryburkermr@gmail.com*

*(215) 205-9079*

Min-U-Script® with Word Index

RANDALL MUMMERT                          1

```
 1          IN THE UNITED STATES DISTRICT COURT

 2       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3                -      -      -

 4   KARLE ECK,                       :
                                      :
 5          Plaintiff,                :
                                      :  Civil Action No.
 6   v.                               :  2:23-CV-02033
                                      :
 7   WALMART, INC.                    :
                                      :
 8        and                         :
                                      :
 9   WAL-MART ASSOCIATES, INC.,       :
                                      :
10          Defendants.               :

11                -      -      -

12

13          Videotape Deposition of RANDALL

14   MUMMERT, taken via Zoom videoconference of

15   all participants, with the witness located in

16   York, Pennsylvania, taken pursuant to notice,

17   beginning at 10:00 a.m. Eastern Standard

18   Time, on Tuesday, May 14, 2024, appearing

19   remotely before Terry Barbano Burke, RMR-CRR

20   and Notary Public.

21

22          TERRY BURKE REPORTING

23             (215) 205-9079
            terryburkermr@gmail.com
24
```

TERRY BURKE REPORTING

RANDALL MUMMERT                               2

```
 1    APPEARANCES (Via Zoom):

 2          RAHUL MUNSHI, ESQUIRE
            HOLLY W. SMITH, ESQUIRE
 3          Console Mattiacci Law, LLC
              1525 Locust Street, Ninth Floor
 4            Philadelphia, Pennsylvania  19102
            munshi@consolelaw.com
 5          hollysmith@consolelaw.com

 6              Counsel for the Plaintiff

 7


 8          MICHAEL J. KINCADE, JR., ESQUIRE
 9          ANDREW T. SIMMONS, ESQUIRE
            Buchanan Ingersoll & Rooney PC
10            50 South 16th Street, Suite 3200
              Philadelphia, Pennsylvania  19102-2555
11          michael.kincade@bipc.com
            andrew.simmons@bipc.com
12
                Counsel for the Defendant
13


14

15    ALSO PRESENT (Via Zoom):

16          KARLE ECK

17          CADEN HENDRICKSON,
            Video Specialists
18          On the Record Legal Videography
              267-238-9880
19            info@otrlv.com

20

21

22

23

24
```

TERRY BURKE REPORTING

Appendix-000353

RANDALL MUMMERT                        212

1      A.   Unless it was a store manager is on a

2   leave of absence that, you know,

3   self-terminated.   I don't know without

4   knowing the numbers.

5      Q.   Okay.   Well, how about we do it this

6   way:   Who are the store managers within

7   Market 233 that you actually terminated,

8   meaning like an involuntary termination?

9      A.   So it would have been Wynee Cloud,

10  Kim Czarnecki, Lance Ransom.   I'm trying to

11  think off the top of my head here.   I

12  remember those three right now.

13     Q.   And Miss Eck too?

14     A.   Yes, Miss Eck.

15     Q.   Okay, were any of those individuals

16  you just named terminated in the year 2019?

17     A.   I don't have the dates in front of me

18  to really remember.

19     Q.   Did Wynee Cloud ever go on FMLA,

20  maternity or a leave of absence?

21     A.   I don't know.

22     Q.   How about Miss Czarnecki?

23     A.   I don't remember.

24          (P-7, previously marked.)

TERRY BURKE REPORTING

1     Q.  Are you done?  I don't want to

2  interrupt you.

3     A.  Yes, yes, I am done.

4     Q.  So is your job dependent upon the

5  performance of your stores or are you

6  evaluated by different metrics?

7     A.  I'm evaluated based on the

8  performance of my stores.  And I can only

9  influence the stores through their store

10  manager leadership team, through the store

11  manager to run their store.

12     Q.  And you mentioned two names earlier,

13  Lance Ransom.  Was he a former store manager,

14  is that what you testified to?

15     A.  Yes, he was.

16     Q.  And did you term him?

17     A.  Yes, I did terminate Lance Ransom for

18  similar things, with store conditions, not

19  maintaining back room binnings, just

20  following up on his team.

21     Q.  And you testified earlier about Curt

22  Schauer, you said he voluntarily resigned his

23  employment?

24     A.  Yes.  I put Curt on a yellow for,

Appendix-000355

**In The Matter Of:**

*KARLE ECK v.*

*WALMART, INC.*

---

*DEBORA PEASLEY*

*March 25, 2024*

---

*Terry Burke Reporting*

*Registered Professional Reporters*

*terryburkermr@gmail.com*

*(215) 205-9079*

Min-U-Script® with Word Index

DEBORA PEASLEY                          1

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3              -      -      -

4   KARLE ECK,                      :
                                    :
5          Plaintiff,               :
                                    :   Civil Action No.
6   v.                              :   2:23-CV-02033
                                    :
7   WALMART, INC.                   :
                                    :
8        and                        :
                                    :
9   WAL-MART ASSOCIATES, INC.,      :
                                    :
10          Defendants.             :

11              -      -      -

12

13          Remote Deposition of DEBORA

14   PEASLEY, taken via Zoom videoconference of

15   all participants, with the witness located in

16   Lititz, Pennsylvania, taken pursuant to

17   notice, beginning at 11:05 a.m Eastern

18   Standard Time, on Monday, March 25, 2024,

19   appearing remotely before Terry Barbano

20   Burke, RMR-CRR and Notary Public.

21

22              TERRY BURKE REPORTING
                   (215) 205-9079
23              terryburkermr@gmail.com

24

TERRY BURKE REPORTING

DEBORA PEASLEY                          2

```
 1   APPEARANCES (Via Zoom):

 2         HOLLY W. SMITH, ESQUIRE
           Console Mattiacci Law, LLC
 3           1525 Locust Street, Ninth Floor
             Philadelphia, Pennsylvania  19102
 4           hollysmith@consolelaw.com

 5             Counsel for the Plaintiff

 6
           MICHAEL J. KINCADE, JR., ESQUIRE
 7         Buchanan Ingersoll & Rooney PC
             50 South 16th Street, Suite 3200
 8           Philadelphia, Pennsylvania  19102-2555
             michael.kincade@bipc.com
 9
               Counsel for the Defendant
10

11

12   ALSO PRESENT (Via Zoom):

13         KARLE ECK

14                      -      -       -

15

16

17

18

19

20

21

22

23

24
```

TERRY BURKE REPORTING

DEBORA PEASLEY                           133

1   gone to Karle's store, the GM was an

2   opportunity, but I can't recall what dates.

3       Q.  Is it possible that the visits that

4   you observed, the zone issue, was when Karle

5   was on maternity leave?

6               MR. KINCADE:  Objection to form.

7               You can answer.

8               THE WITNESS:  No.  Because Bryan

9   was doing a pretty good job when Karle was on

10  maternity leave.  He had the store together.

11  Saw improvement when Bryan was there when

12  Karle was on maternity leave.

13  BY MS. SMITH:

14      Q.  So you can't recall when these

15  conversations happened, but you are certain

16  that it wasn't when Karle was on maternity

17  leave?

18      A.  What do you mean?  I just said that

19  when -- I just said that -- you asked me -- I

20  just said that when Bryan was there, when she

21  was on maternity leave, you could see that

22  there was an improvement in the store when

23  Bryan was running the store while she was on

24  maternity leave.  That's all I said.

TERRY BURKE REPORTING

| CLIENT NUMBER | CASE NUMBER | EE ID | FIRST NAME | LAST NAME |
|---|---|---|---|---|
| 2048 | C101180204805020AA | 102939878 | CURT | SCHAUER |
| 2048 | C103100204802450TC | 103182987 | QUACHERYL | PUGH |
| 2048 | B905240204800022AA | 109245425 | STEVEN | MYERS |
| 2048 | C008150204800729AA | 215363163 | KARLE | ECK |
| 2048 | C008150204800729AA | 215363163 | KARLE | ECK |
| 2048 | C010070204801178TC | 215363163 | KARLE | ECK |
| 2048 | C106010204800409AA | 215363163 | KARLE | ECK |
| 2048 | C106010204800409AA | 215363163 | KARLE | ECK |
| 2048 | B809140204800302AA | 216150398 | CHRIS | MARCHESKIE |
| 2048 | B903270204800066AA | 216150398 | CHRIS | MARCHESKIE |
| 2048 | C002030204800516AA | 218062494 | WYNNE | CLOUD |

| JOB TITLE | DEPARTMENT ID | COMPANY CODE | RESPONSIBILITY CODE |
|---|---|---|---|
| Store Manager, $60mm - $80mm - | 4404 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 4200 | 001 | 0016 |
| Store Manager, Academy, >= $80 | 1529 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| STOREMGR>= $80MM-WM | 2023 | 001 | 0233 |
| StoreMgr>= $80MM-WM | 2023 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2023 | 001 | 0233 |

| ORGANIZATION ID | DATE OF INTAKE | CASE STATUS | LEAVE TYPE | LEAVE SUBTYPE |
|---|---|---|---|---|
| 0022 | 1/18/2021 | Closed | Employee Medical | Employee Medical |
| 0003 | 3/10/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 5/23/2019 | Closed | Employee Medical | Employee Medical |
| 0022 | 8/15/2020 | Closed | Employee Medical | Pregnancy |
| 0022 | 8/15/2020 | Closed | Employee Medical | Pregnancy |
| 0022 | 10/7/2020 | Closed | Family Leave | Newborn |
| 0022 | 6/1/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 6/1/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 9/14/2018 | Closed | Employee Medical | Employee Medical |
| 0022 | 3/27/2019 | Closed | Employee Medical | Employee Medical |
| 0022 | 2/3/2020 | Closed | Employee Medical | Employee Medical |

| CASE TYPE | CAUSE TYPE | ABSENCE STATUS | DATE REQUEST BEGIN | DATE REQUEST END |
|---|---|---|---|---|
| Continuous | Disability | Approved | 1/9/2021 | 6/30/2021 |
| Continuous | Other | Approved | 3/8/2021 | 3/14/2021 |
| Continuous | Disability | Approved | 6/6/2019 | 6/12/2019 |
| Continuous | Disability | Approved | 8/9/2020 | 9/4/2020 |
| Continuous | Disability | Approved | 8/9/2020 | 9/4/2020 |
| Continuous | Other | Approved | 10/24/2020 | 12/4/2020 |
| Continuous | Disability | Approved | 6/2/2021 | 6/8/2021 |
| Continuous | Disability | Approved | 6/2/2021 | 6/8/2021 |
| Continuous | Disability | Approved | 10/3/2018 | 10/23/2018 |
| Continuous | Disability | Terminated | 3/28/2019 | 5/24/2019 |
| Continuous | Disability | Approved | 1/26/2020 | 2/26/2020 |

| DATE APPROVED BEGIN | DATE APPROVED END | RETURN TO WORK DATE | SPECIALIST |
|---|---|---|---|
| 1/9/2021 | 4/3/2021 | | bcornejo |
| 3/12/2021 | 3/15/2021 | 3/15/2021 | jadorno |
| 6/6/2019 | 6/30/2019 | 7/1/2019 | phazel |
| 8/10/2020 | 10/17/2020 | 10/18/2020 | nnazario |
| 8/10/2020 | 10/17/2020 | 10/18/2020 | nnazario |
| 10/24/2020 | 12/4/2020 | 12/5/2020 | aminervi |
| 6/3/2021 | 7/9/2021 | 6/19/2021 | jbatista |
| 6/3/2021 | 7/9/2021 | 6/19/2021 | jbatista |
| 10/4/2018 | 11/30/2018 | 12/1/2018 | cbouck |
| 3/28/2019 | 6/9/2019 | | tgranja |
| 1/27/2020 | 3/19/2020 | 3/16/2020 | mhondoy |

**In The Matter Of:**

*KARLE ECK v.*

*WALMART, INC.*

*RANDALL MUMMERT*

*May 14, 2024*

*Terry Burke Reporting*

*Registered Professional Reporters*

*terryburkermr@gmail.com*

*(215) 205-9079*

Min-U-Script® with Word Index

| CLIENT NUMBER | CASE NUMBER | EE ID | FIRST NAME | LAST NAME |
|---|---|---|---|---|
| 2048 | C101180204805020AA | 102939878 | CURT | SCHAUER |
| 2048 | C103100204802450TC | 103182987 | QUACHERYL | PUGH |
| 2048 | B905240204800022AA | 109245425 | STEVEN | MYERS |
| 2048 | C008150204800729AA | 215363163 | KARLE | ECK |
| 2048 | C008150204800729AA | 215363163 | KARLE | ECK |
| 2048 | C010070204801178TC | 215363163 | KARLE | ECK |
| 2048 | C106010204800409AA | 215363163 | KARLE | ECK |
| 2048 | C106010204800409AA | 215363163 | KARLE | ECK |
| 2048 | B809140204800302AA | 216150398 | CHRIS | MARCHESKIE |
| 2048 | B903270204800066AA | 216150398 | CHRIS | MARCHESKIE |
| 2048 | C002030204800516AA | 218062494 | WYNNE | CLOUD |

Appendix-000366

| JOB TITLE | DEPARTMENT ID | COMPANY CODE | RESPONSIBILITY CODE |
|---|---|---|---|
| Store Manager, $60mm - $80mm - | 4404 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 4200 | 001 | 0016 |
| Store Manager, Academy, >= $80 | 1529 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2334 | 001 | 0233 |
| STOREMGR>= $80MM-WM | 2023 | 001 | 0233 |
| StoreMgr>= $80MM-WM | 2023 | 001 | 0233 |
| Store Manager, >= $80mm - Wm S | 2023 | 001 | 0233 |

Appendix-000367

| ORGANIZATION ID | DATE OF INTAKE | CASE STATUS | LEAVE TYPE | LEAVE SUBTYPE |
|---|---|---|---|---|
| 0022 | 1/18/2021 | Closed | Employee Medical | Employee Medical |
| 0003 | 3/10/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 5/23/2019 | Closed | Employee Medical | Employee Medical |
| 0022 | 8/15/2020 | Closed | Employee Medical | Pregnancy |
| 0022 | 8/15/2020 | Closed | Employee Medical | Pregnancy |
| 0022 | 10/7/2020 | Closed | Family Leave | Newborn |
| 0022 | 6/1/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 6/1/2021 | Closed | Employee Medical | Employee Medical |
| 0022 | 9/14/2018 | Closed | Employee Medical | Employee Medical |
| 0022 | 3/27/2019 | Closed | Employee Medical | Employee Medical |
| 0022 | 2/3/2020 | Closed | Employee Medical | Employee Medical |

| CASE TYPE | CAUSE TYPE | ABSENCE STATUS | DATE REQUEST BEGIN | DATE REQUEST END |
|---|---|---|---|---|
| Continuous | Disability | Approved | 1/9/2021 | 6/30/2021 |
| Continuous | Other | Approved | 3/8/2021 | 3/14/2021 |
| Continuous | Disability | Approved | 6/6/2019 | 6/12/2019 |
| Continuous | Disability | Approved | 8/9/2020 | 9/4/2020 |
| Continuous | Disability | Approved | 8/9/2020 | 9/4/2020 |
| Continuous | Other | Approved | 10/24/2020 | 12/4/2020 |
| Continuous | Disability | Approved | 6/2/2021 | 6/8/2021 |
| Continuous | Disability | Approved | 6/2/2021 | 6/8/2021 |
| Continuous | Disability | Approved | 10/3/2018 | 10/23/2018 |
| Continuous | Disability | Terminated | 3/28/2019 | 5/24/2019 |
| Continuous | Disability | Approved | 1/26/2020 | 2/26/2020 |

Appendix-000369

| DATE APPROVED BEGIN | DATE APPROVED END | RETURN TO WORK DATE | SPECIALIST |
|---|---|---|---|
| 1/9/2021 | 4/3/2021 | | bcornejo |
| 3/12/2021 | 3/15/2021 | 3/15/2021 | jadorno |
| 6/6/2019 | 6/30/2019 | 7/1/2019 | phazel |
| 8/10/2020 | 10/17/2020 | 10/18/2020 | nnazario |
| 8/10/2020 | 10/17/2020 | 10/18/2020 | nnazario |
| 10/24/2020 | 12/4/2020 | 12/5/2020 | aminervi |
| 6/3/2021 | 7/9/2021 | 6/19/2021 | jbatista |
| 6/3/2021 | 7/9/2021 | 6/19/2021 | jbatista |
| 10/4/2018 | 11/30/2018 | 12/1/2018 | cbouck |
| 3/28/2019 | 6/9/2019 | | tgranja |
| 1/27/2020 | 3/19/2020 | 3/16/2020 | mhondoy |

| SPECIALIST | SUPERVISOR |

PJACQUEL

MGONZAL3

WSANTIAG

MGONZAL3

**SPECIALIST SUPERVISOR**

PJACQUEL

MGONZAL3

WSANTIAG

MGONZAL3

Appendix-000372