IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARLE ECK,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>WALMART INC., *et al.*,<br>　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 5:23-cv-02033-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                       **December 18, 2024**

      Plaintiff Karle Eck alleges discrimination and retaliation for her pregnancy and concomitant maternity leave by her employer, Defendants Walmart Incorporated and Wal-Mart Associated Incorporated. She claims that her Market Manager Randall Mummert, upon learning of her pregnancy, was concerned that her impending maternity leave, and any additional leave that would be required if she decided to have more children, would be disruptive to the business of the store she managed. Therefore, Plaintiff alleges that Mummert hatched a plan to "move the goalposts" by issuing her a series of disciplinary warnings and refusing to provide her with the resources to improve her store's performance before she was terminated from employment. Drawing all inferences in Plaintiff's favor, the Court finds genuine issues of material fact exist as to whether Defendants' non-discriminatory reasons for terminating her were pretextual. Summary Judgment will be denied as to both Plaintiff's pregnancy discrimination and retaliation claims.

    **I.**    **BACKGROUND**

      Although Plaintiff worked in various capacities for Defendants' Company since she was hired in 2010, between 2017 and 2021 Plaintiff was employed as the Lancaster Store Manager in Market 233. *See* Defs.' Statement of Undisp. Facts ("ECF No. 30") at ¶¶ 6, 125. As a Store

Manager, among other things, Plaintiff was tasked with supervising and managing hourly associates, communicating safety plans, and ensuring that new merchandise was unloaded, scanned, and put away to keep the store's backroom and floors clear. *Id*. at ¶¶ 13-18. At some point between the end of November 2019 and January 2020, Plaintiff informed the Market 233 Manager Randall Mummert that she was pregnant. *Id*. at ¶ 26; Pl.'s Statement of Disp. Facts ("ECF No. 31") at ¶ 26. Plaintiff was approved for short-term disability pay and Family Medical Leave of Absence from August 9, 2020, until December 4, 2020. ECF No. 30, at ¶¶ 33, 44.

Plaintiff alleges that Mummert's demeanor towards her changed after she announced her pregnancy. ECF No. 31, at ¶ 193. Shortly after learning the news, Mummert rated Plaintiff as "Improvement Needed" in her annual performance review for the first time. *Id*. at ¶ 194. This blindsided Plaintiff, as she had never been disciplined or even made aware of the performance issues alleged in her review prior to this rating. *Id*. at ¶¶ 195-96. By the time Plaintiff left for maternity leave in August of 2020, she worked to guarantee the backrooms and floors were clean, employee engagement was high, and the Lancaster store was efficiently processing and unloading freight. ECF No. 31, at ¶¶ 206-08, 211, 213-14. Plaintiff's store was exceeding the market average in the internal ranking systems Market 233 used to evaluate store performance, known as the OGP metrics. *Id*. at ¶ 215.

However, when Plaintiff returned from maternity leave in December of 2020, the store was having significant issues processing freight, which were further complicated by staffing issues related to the Covid-19 pandemic. *Id*. at ¶¶ 219-20, 225. These issues were common to many of the Market 233 stores at that time. *See id*., at ¶ 246. Plaintiff requested that Mummert send associates from other stores to assist with processing the excess freight, but he refused to do so, despite fielding similar requests from other Store Managers in Market 233. *Id*. at ¶¶ 236-37. In the spring of 2021, Plaintiff received a formal disciplinary warning known as a "Yellow Coaching"

from Mummert for a lack of timely follow-up, poor plan execution, and unaccounted-for merchandise. ECF No. 30, at ¶¶105-106; ECF No. 31, at ¶ 105. Then, on May 13, 2021, Mummert administered an "Orange Coaching" to Plaintiff for "failing to build an effective plan for late modular and freight, and failing to implement effective processes for freight, stocking, zoning, and bin scanning." ECF No. 30, at ¶ 108. On July 24, 2021, Mummert submitted a PowerPoint presentation to the Regional People Lead and Vice President recommending Plaintiff's termination in which he documented issues with zoning, cleanliness, bin scanning accuracy and freight planning, and safety both through photographs and first-hand observations from other Market 233 Management Team members. *Id*. at ¶¶ 112-13. However, the Vice President and Regional People Lead decided that a Red Coaching should be issued prior to termination. ECF No. 31, at ¶ 264. Two weeks after receiving the Red Coaching, Plaintiff was terminated from her role as Store Manager. ECF No. 30, at ¶ 125. Although there were numerous stores in Market 233 struggling with freight flow and ranking below the Lancaster store in the OGP metrics, Plaintiff was the only Store Managers from Market 233 terminated in 2021. ECF No. 31, at ¶¶ 267-68; 274-75.

Plaintiff alleges that her disciplinary coachings and termination were a direct result of her pregnancy and maternity leave and Mummert's refusal to provide her with the necessary resources to address the freight overflow issues. *Id*. at ¶¶ 107, 249, 257, 271. After receiving her Orange and Yellow Coachings, she formulated action plans for the Lancaster store that would address the ongoing issues. *Id.* at ¶¶ 251, 258. Yet, despite signing off on these plans, Mummert still decided to terminate her employment. *Id.* at ¶¶ 252, 259.

## II.    STANDARD

Federal Rule of Civil Procedure 56(a) sets forth the standard for reviewing a Motion for Summary Judgment. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there is "no genuine issue as to any material fact," the moving party is entitled to judgment as a matter of law. *Id*. at 323. A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is to be used sparingly in employment discrimination cases, especially where, as here, we are viewing the case at first glance." *Doe v. C.A.R.S. Protec. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008). "In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant. The employer must persuade us that even if all inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to plaintiff, no reasonably jury could find in the plaintiff's favor." *Id*. at 362.

### III. ANALYSIS

#### a. Pregnancy Discrimination – Title VII and PHRA

Plaintiff raises claims of pregnancy discrimination under Title VII and the PHRA. Title VII, as amended by the Pregnancy Discrimination Act, prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex" including "on the basis of pregnancy, childbirth, or other related medical conditions ...." 42 U.S.C. § 2000e-2(a)(1), e(k). In the absence of direct evidence of discrimination, both Title VII and the PHRA are analyzed under the framework set for in *McDonnell Douglas Corp. v. Green*, under which, "(1) a plaintiff must first establish a prima facie case of discrimination; (2) if she does, the employer must give a legitimate reason for its conduct; and (3) if the employer meets its

4

burden, the plaintiff must show the employer's proffered reason is pretextual." 411 U.S. 792, 802 (1973); *Donnelly v. Cap. Vision Servs., LLC*, 644 F. Supp. 3d 97, 104 (E.D. Pa. 2022); *Jones v. School Dist. Of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999). "Direct evidence of discrimination [is] evidence which, if believed, would prove the existence of the fact [in issue] *without inference or presumption*. . . . In pregnancy discrimination cases, such evidence is commonly in the form of an admission by a decisionmaker that an employee's pregnancy affected an employment decision, such as suspending or terminating an employee because she was pregnant." *Brewer v. Key Bank, N.A.*, 2024 WL 4026529, at *5 n.1 (E.D. Pa. Sept. 3, 2024) (internal citations and quotations omitted)).

In the absence of any direct evidence of discriminatory intent, such as admissions that Defendants terminated Plaintiff because of her pregnancy and related maternity leave, the Court will turn to the first step of the *McDonnell Douglas* framework to assess whether Plaintiff has established a prima facie case for pregnancy discrimination. As Plaintiff correctly points out, there is a low bar for establishing a prima facie case of employment discrimination. *Zielinski v. Pulte Group, Inc.*, 2011 WL 2937427, at *3 (E.D. Pa. July 21, 2011).

###    i. Plaintiff's Prima Facie Case of Pregnancy Discrimination

A prima facie case of pregnancy discrimination requires proof of four elements: "1) [Plaintiff] is or was pregnant and her employer knew she was pregnant; 2) she was qualified for her job; 3) she suffered an adverse employment decision;" and (4) "there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008).

Defendants' analysis of Plaintiff's prima facie case for pregnancy discrimination begins by contesting the fourth element of the analysis, whether Plaintiff has established a nexus between her disciplinary coachings and termination and her pregnancy. *See* Mot. for Summ. J. ("ECF No.

5

29-2"), at 10. Although Defendants have essentially conceded elements one through three for purposes of this motion, it is worth acknowledging that the Court finds Plaintiff has satisfied her burden for establishing these elements by showing (1) she informed her Market Manager that she was pregnant in December of 2019; (2) was rated as a "Solid Performer" on her Store Manager annual performance reviews in 2018 and 2019, and (3), was terminated from her employment with Walmart in August of 2021. Compl. ("ECF No. 1"), at ¶¶ 22-23, 27, 25-26, 61; S-APPX000039, 41, ECF No. 31-3; Mummert Dep. Tr. 36:1-3, 9-10, ECF No. 31-3; App.–000294, ECF No. 29-3.

"The evidence most often used to establish [a nexus in a claim of pregnancy discrimination] is that of disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class." *McNeil v. Penn Warehousing and Distrib., Inc.*, 2021 WL 1923008, at *7 (E.D. Pa. May 13, 2021) (citing *Doe*, 527 F.3d at 366). In evaluating whether employees are similarly situated, courts look for similar ability or inability to do their assigned job. *See Shaffer v. Cranberry Twp.*, 2021 WL 4710919, at *7 (W.D. Pa. Oct. 8, 2021); *Young v. UPS*, 575 U.S. 206, 229 (2015). Title VII and the PHRA do not "require preferential treatment for pregnant employees. Instead, [they] mandate[] that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work." *Doe*, 527 F.3d at 364. Therefore, in *McNeil v. Penn Warehousing and Distribution, Inc.*, where the plaintiff compared herself to other pregnant women who were not assigned the same work as her or who were allowed to take naps during the day when she was not, the court found she did not establish a nexus because she "pled no facts regarding a similarly situated non-pregnant but other temporarily disabled employee being treated more favorably than her." *McNeil*, 2021 WL 1923008, at *7.

However, showing that a similarly situated non-pregnant employee was treated more favorably is only one method of establishing a nexus between pregnancy and employment

6

termination. Ultimately, "[t]here are 'several ways' to establish nexus – and while any one alone may be sufficiently suggestive of a causal link, causation can also be established holistically 'based upon review of all proffered evidence.'" *Vasoli v. Yards Brewing Company, LLC*, 2021 WL 2808823, at *3 (E.D. Pa. July 6, 2021) (quoting *Ahern v. EResearch Tech., Inc.*, 183 F. Supp. 3d 663, 669 (E.D. Pa. 2016)). In addition to evidence of disparate treatment, this Court may also consider how close in time the pregnancy and termination were, whether the employer established a pattern of antagonism towards plaintiff, and whether there were inconsistencies in the employer's stated reason for terminating plaintiff. *Id*.

At the outset, the temporal proximity between Plaintiff's pregnancy announcement in the late fall of 2019, her maternity leave ending in December of 2020, and her termination in August of 2021 does not alone suggest a causal link between her pregnancy and termination. ECF No. 30, at ¶¶ 26, 44, 125. Additionally, Plaintiff has not put forth enough evidence to show a pattern of antagonism. Plaintiff alleges she felt Mummert was upset with her for taking time off and was targeting her to prevent her from taking more time off if she decided to have another child. She claims this is why she received her first "Improvement Needed" mark on her annual performance review in 2020, shortly after announcing her pregnancy. ECF No. 31, at ¶¶ 193-194. Plaintiff does not, however, provide any specific evidence of statements or conduct from Mummert from which antagonism could be inferred. Defendants, on the other hand, provide evidence of direct communications between Mummert and Plaintiff which refute Plaintiff's unsupported allegation of antagonism. In the months following her pregnancy announcement and during her maternity leave, Defendants claim Mummert expressed concern for Plaintiff's health and well-being and encouraged her to attend doctor's appointments that conflicted with her work schedule. ECF No. 30, at ¶¶ 27, 29, 31-32, 34-36, 46-47. Mummert continued to check in with Plaintiff after she returned to work regarding her health and need for assistance at the store. *Id*. at ¶ 104. The Court

finds the evidence of temporal proximity between Plaintiff's pregnancy announcement and/or return from maternity leave and her termination, as well as the bare assertion that Defendant held animosity towards Plaintiff are insufficient on their own to establish a nexus. However, a reasonable factfinder could infer that a nexus existed between Plaintiff's pregnancy and termination based on the evidence of disparate treatment between herself and a similarly situated employee and inconsistencies in Defendants' explanation for terminating her.

Plaintiff alleges that although multiple stores within Market 233 were experiencing similar freight flow issues as the Lancaster store in 2020 and 2021, she was the only Store Manager from this group that was terminated in 2021. Pl.'s Brief in Opp'n. to Mot. for Summ. J. ("ECF No. 31"), at 19; Karle Eck Dep. Tr. 263:2-20, 325:8-16, ECF No. 31-3. Notably, Plaintiff was also the only Store Manager to take maternity leave during this period. ECF No. 31, at ¶ 192. Stores within Market 233 are ranked based on their performance on Online Grocery and General Merchandise Pickup ("OGP") metrics, and although the Lancaster store was in the bottom one-half of these rankings when Plaintiff received her disciplinary warnings in 2021, it was never the lowest performing store. *Id.*, at ¶¶ 179, 248, 254-55, 267-68. Plaintiff draws specific comparisons between herself and another Store Manager, Steven Myers, whose store "experienced identical freight and staffing issues" and was "performing worse than Plaintiff['s store] on OGP metrics" in 2021. *Id.* at 19. However, Myers was never given a Red Coaching or terminated from employment like Plaintiff. *Id*. Additionally, Myers received staff assistance to process the overflow of freight in his store, was given a verbal discussion and thirty days to improve his performance before receiving a Yellow Coaching, and nearly ten months after his Yellow Coaching to improve his performance before he received an Orange Coaching. *Id.* at 19-20; Steven Myers Dep. Tr. 10:10-20, 22:2-20, 39:21-40:10, ECF No. 31-3; ECF No. 29-3, App.–000344. Mummert's comments on Myers' coachings allege he failed "to build and follow up on his freight planning process," "follow his

plan to ensure current overstock was binned timely," and "complete his 30-day action plan for effectively planning freight and staffing in key areas of the store." ECF No. 29-3, App.-000344. Mummert's comments on Plaintiff's coachings similarly reported a failure "to build an effective plan to ensure the store freight is worked, binned, and validated daily" and follow up and execute that plan in a timely manner. *Id.*, App.-000277, 279, 290. Plaintiff claims that although their stated performance issues were similar, unlike Myers, she was never afforded a verbal discussion prior to her first warning, as Defendants' policies required, was given a Yellow Coaching only three months after returning from maternity leave, six weeks to improve before she was issued an Orange Coaching, two months to improve before she was issued a Red Coaching, and only two weeks to improve before she was ultimately terminated—all in the span of five months. ECF No. 31, at 17-18; *see* ECF No. 29-3, App.–000277-280, 290. Plaintiff also claims that unlike with Myers, Mummert refused to send associates from other stores to assist with processing the excess freight in the Lancaster store when she requested it. Eck Dep. Tr. 325:6-8, ECF No. 31-3.

    Defendants first contest Plaintiff's allegation that she was the only Store Manager disciplined by Mummert for freight flow issues between 2020 and 2021. In support of this, Defendant provides a list of six Store Managers that received disciplinary warnings or were terminated with a similar disciplinary process between 2019 and 2023 because of the condition of their store or their failure to build and follow through with a plan for processing freight. ECF No. 29-2, at 11-12; Mummert Dep. Tr. 149:1-16, ECF No. 29-3; ECF No. 29-3, App.– 306, 315, 318, 319-20, 342. Mummert testified that he followed his usual procedure when recommending Eck's termination, which included drafting a PowerPoint presentation that documented his basis for making the recommendation. Mummert Dep. Tr. 240:23-24, ECF No. 29-3. Defendants further refute Plaintiff's claim that Steve Meyers is a similarly situated employee on account of the different type of store he manages and his job description. Myers works in an Academy Store

9

which hosts training sessions for new hires and current employees. *See* ECF No. 29-2, at 13–-4. Although Academy Store Managers have many of the same job responsibilities as Store Managers related to the oversight of hourly associates and satisfaction of sales and profit goals, they are responsible for operating a department rather than a facility. *See* ECF No. 29-3, App.–000166. To that end, Academy Store Managers are tasked with "[e]nsuring the success of Academy training environment and store standards;" "creating an engaging and inclusive environment;" "engaging the trainees during their store assignment;" "engaging the customers within the Academy training format;" "serving as a visible operations champion in the Academy program;" and "acting as an Academy advocate." *Id*. Defendants argue that Plaintiff and Myers were disciplined on a comparable timeline and any discrepancies were a direct result of their differing job descriptions and subjective facts related to their performance that Plaintiff lacks sufficient knowledge of. ECF No. 29-2, at 14. Lastly, Defendants have provided deposition testimony and text message evidence that Mummert and other employees for Defendant were cognizant of Plaintiff's stated staffing issues and took various actions to remedy the situation, including temporarily shutting down online grocery orders, sending associates in from another store to process freight, and allowing Plaintiff to request overtime for her store associates. ECF No. 29-3, App.–000141-142, 270; Decl. Deborah Peasley, ECF No. 29-3, at ¶ 7.

Although Defendant has alleged factual differences between the specific job responsibilities of Plaintiff as a Store Manager and Myers as an Academy Store Manager, a showing of disparate treatment only requires that the employees are similar in their ability or inability to do their work. Plaintiff has provided sufficient evidence to establish that Myers was similarly situated in his inability to perform his job responsibilities, as his managers reported that he experienced similar difficulties in building and following up on a freight planning process. ECF No. 29-3, App.–000344. Plaintiff has provided sufficient facts from which a jury could infer

10

disparate treatment after comparing her disciplinary history to that of Mr. Myers: she was not afforded a discussion before receiving her first warning, she was not given as much time to improve the conditions of the store between her coachings, and she was not provided with the necessary assistance to deal with the freight flow issues that arose while she was on maternity leave.

Plaintiff has also demonstrated inconsistencies in Defendants' claim that she was terminated on account of her unsatisfactory performance. Prior to announcing her pregnancy, Plaintiff received consistent positive performance feedback, was rated a "Solid Performer" on every annual performance review and had never received a formal disciplinary warning. ECF No. 31, at ¶¶ 166, 171-72, 175; *id.*, at 17. However, in February of 2020, two months after her pregnancy announcement, she was rated as "Improvement Needed" for the first time in her role as Store Manager. *Id.*, at ¶¶ 194, 197; Eck Dep. Tr. 205; ECF No. 31-3, S-APPX000044. After working to address this negative rating, in June of 2020, shortly before taking her maternity leave, Plaintiff was commended by her superiors for the pristine condition of her store, especially the backrooms which were reportedly pallet-free. ECF No. 31, at ¶¶ 202, 204, 206-08. Despite this positive performance record and perseverance, when Plaintiff returned from her maternity leave to find the Lancaster store struggling with freight flow and staffing shortages, she received three disciplinary coachings and was ultimately terminated from her position eight months later. *Id.* at ¶¶ 219, 221-22, 228, 230-31. Plaintiff alleges that freight issues were systemic throughout the Market 233 stores during this time and exacerbated by staffing issues resulting from the Covid-19 pandemic. *Id.* at ¶¶ 219, 232, 234. Despite Defendants' awareness of these widespread difficulties, Plaintiff's recent return from maternity leave, and the lower-rated performance of other Market 233 stores in the OGP Metrics, Plaintiff was the only Store Manager terminated in 2021. *Id.* at 19.

Viewing the evidence holistically in the light most favorable to Plaintiff, the Court finds the differing disciplinary approaches Defendants took towards Plaintiff and her non-pregnant counterpart Steven Myers, as well as the inconsistencies in Defendants' reason for terminating her suggest a reasonable juror could find a nexus between her pregnancy and termination.

### ii. Defendants' Legitimate Reason for Their Conduct

The next step in the *McDonnell Douglas* framework shifts the burden to the Defendants as the employer to "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Doe*, 527 F.3d at 358. This is a "relatively light burden" that requires the Defendant to propose a motivation for its conduct other than discrimination. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

Defendants argus that Plaintiff was terminated because she failed to "satisfactorily fulfill her responsibilities as Store Manager" despite three disciplinary warnings and sufficient time given for her to improve her performance issues. ECF No. 29-2, at 15. As Store Manager, Plaintiff was tasked with developing and executing a plan to improve the conditions of the store, including how merchandise was scanned and processed, and ensuring open roles were filled and employees were properly trained. *See* ECF No. 29-3, App.–000163. Yet, under Plaintiff's leadership as Store Manager, the inventory continuously outpaced the sales in the Lancaster store "due to the failure of staff to timely scan and bin freight to ensure it was catalogued in the store's system." ECF No. 29-2, at 17. This prompted Mummert's decision to recommend Plaintiff's termination in the summer of 2021. Mummert supported his recommendation for Plaintiff's termination with photographs of Plaintiff's store conditions and independent observations of several Market 233 Management Team members who claimed Plaintiff's store had bins that had not been scanned for 242 days, was considered a "high accident" store, and had the highest employee call out rate in the market. ECF No. 30, at ¶¶ 114-15; ECF No. 29-3, App.–000282-89.

12

The Court finds Defendants have provided sufficient evidence to support their nondiscriminatory reason for terminating Plaintiff.

### iii. Plaintiff's Showing of Pretext

Last, for Plaintiff's pregnancy discrimination claim to defeat summary judgment, she must prove that Defendants' proffered reasons for terminating her were pretextual. "At the summary judgment stage, a plaintiff can establish pretext by pointing to 'some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Donnelly v. Capital Vision Services, LLC*, 644 F.Supp.3d 97, 106-07 (E.D. Pa. 2022) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). The Court is permitted to consider the same evidence Plaintiff has put forward in her prima facie case of disparate treatment and inconsistencies in Defendants' reason for her termination. *Doe*, 573 F.3d at 370.

Plaintiff has provided enough to permit a factfinder to conclude Defendants did not terminate her solely because of her 2021 performance as Store Manager. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Plaintiff had a longstanding positive track record with Defendants' company and a close working relationship with her Market 233 Manager from 2017 until 2019. She had never been formally disciplined before or received a performance rating that indicated a need for improvement. Amidst a global pandemic, Plaintiff returned from maternity leave to a store that was in far worse condition than she left it. However, Plaintiff was only given three months to turn things around before, without warning, she received a Yellow Coaching for failing to build a plan to process the excess freight. Things only escalated from there, as Plaintiff then received an Orange Coaching six weeks later for nearly the same reason, and a Red Coaching and notice of termination within three months of the Orange Coaching. Although other Store

Managers were facing similar freight flow issues and ranking lower than Plaintiff in the OGP metrics, none of them were terminated from their positions.

Considering the evidence Plaintiff has put forward regarding disparate treatment and inconsistencies in her discipline and eventual termination, Defendants' motion for summary judgment on Plaintiff's claim of pregnancy discrimination will be denied. It is not the job of the Court to weigh the evidence at this stage and determine whether Defendants' stated intent is credible. Rather, it is a matter of fact for the jury to determine whether an inference of discrimination is warranted from the evidence provided, and a finding of pretext should be reached. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996).

### b. Retaliation – The FMLA, Title VII, and the PHRA

Plaintiff next raises claims of retaliation under Title VII, the PHRA, and the FMLA for the "retaliatory conduct she faced following her pregnancy announcement and concomitant maternity leave." *See* ECF No. 31, at 10 n.2, 28 ("Plaintiff's FMLA retaliation claim is closely aligned with her Title VII pregnancy retaliation claim, as both causes of action stem from Defendants' concerted effort to terminate Plaintiff's employment following her protected maternity leave."). All three statutes must be analyzed under the *McDonnell Douglas* burden-shifting framework, so the Court will review them in tandem. *See Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022).

"The elements of retaliation under [the PHRA, Title VII, and the FMLA] are essentially the same: in order to state a prima facie case, a plaintiff must show that (1) [s]he engaged in a protected activity (such as taking FMLA qualifying leave . . .), (2) [s]he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision." *Id.*

As with Plaintiff's pregnancy discrimination claim, and for the same reasons, the Court finds the first two elements satisfied. Plaintiff engaged in protected activity when she applied for and took qualified FMLA leave, and she suffered an adverse employment decision in 2021 when she was terminated.

Here again, the dispute centers on whether Plaintiff has established a causal connection between her maternity leave and termination. The Third Circuit has found that the causal connection requirement "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000). A plaintiff can establish a causal connection through evidence similar to that which can be used to prove a nexus in a pregnancy discrimination claim, including temporal proximity, ongoing antagonism, inconsistent reasons for termination, and certain conduct towards others. *See id.*, at 281.

Drawing all inferences from the facts in Plaintiff's favor, the Court finds the evidence presented suggests a causal connection between Plaintiff's maternity leave and termination. Although, the temporal proximity between her exercise of maternity leave and termination is not suggestive of retaliatory animus on its own, it is when considered along with Plaintiff's disciplinary and performance history at the company as well as the performance deficiencies of other Market 233 stores at the time of Plaintiff's termination. Near the end of 2019, Plaintiff informed her Market Manager of her pregnancy and subsequent need for maternity leave which would conflict with the company's busiest time of the year, the annual inventory and Black Friday. ECF No. 31, at ¶ 188; Mummert Dep. Tr. 36:15-39:18, ECF No. 31-3. Plaintiff alleges her employer changed his demeanor towards her after that announcement because he was upset she was missing the busiest time of year for the company and feared that if she continued to have

children and required extended maternity leave, it would disrupt the flow of business in the Lancaster store. ECF No. 31, at ¶¶ 190, 191, 193; *see* Mummert Dep. Tr. 39:14-18, 43:23-45:9, ECF No. 31-3. Mummert administered Plaintiff her first "Improvement Needed" rating shortly after she announced her pregnancy. ECF No. 31, at ¶ 194. Before taking maternity leave, Plaintiff worked to improve her store's OGP performance rankings and earn the approval of her superiors for the condition of her store. *Id*. at ¶¶ 199, 202, 204, 215. While Plaintiff was on maternity leave, both her store and others within Market 233 began to experience issues with staffing and an excess of merchandise which they were struggling to scan and bin in a timely fashion. *Id*. at ¶¶ 234, 235, 237. Yet, despite store-wide freight flow and staffing issues and lower performance rankings, Plaintiff, as the only Store Manager to have recently taken maternity leave, was also the only Store Manager terminated on account of these performance deficiencies in 2021. *Id*. at ¶¶ 267-687, 274-75.

      For the same reasons stated in its analysis of Plaintiff's pregnancy discrimination claim, the Court accepts Defendants' proffered non-discriminatory reason for terminating Plaintiff, her unimproved performance, supported by observations from Market 233 Manager Randall Mummert, other regional employees, and the OGP metrics for the Lancaster store. The Court also finds that the evidence Plaintiff has provided to satisfy the causation requirement of her prima facie case of retaliation is also sufficient for her pretext requirement. Plaintiff has provided evidence from which a factfinder could disbelieve Defendants' articulated reason for terminating her: her longstanding positive performance record before her pregnancy, her progressive disciplinary timeline upon returning from maternity leave, and comparative OGP metrics of similarly performing but non-pregnant Store Managers who were not terminated from their roles. Finding genuine disputes of fact over all three elements of the *McDonnell Douglas* framework,

the Court also denies Defendants' motion for summary judgment as to Plaintiff's retaliation claims under Title VII, the PHRA, and the FMLA.

## IV.     CONCLUSION

Plaintiff has put forth sufficient evidence from which a reasonable factfinder could infer that Defendants' stated reasons for terminating her were pretextual. Therefore, the Court denies Defendants' Motion for Summary Judgment (ECF No. 29). An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge